

# NYSCEF - Queens County Supreme Court
# Confirmation Notice



This is an automated response for Supreme Court cases.  The NYSCEF site has received your electronically filed documents for the following case.

### 710424/2017

**FV-I, INC. IN TRUST FOR MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC - v. - LUIS E PALAGUACHI et al**

**Assigned Judge: Ernest F Hart**

## Documents Received on   08/10/2018 02:39 PM

| Doc # | Document Type | Motion # |
|---|---|---|
| 75 | RESPONSE TO DEMAND | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |
| 76 | AFFIDAVIT | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |
| 77 | EXHIBIT(S) A | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |
| 78 | EXHIBIT(S) B | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |
| 79 | EXHIBIT(S) C | |
| | Does not contain an SSN or CPI as defined in 202.5(e) or 206.5(e) | |

## Filing User

| | | | |
|---|---|---|---|
| Name: | **Raspreet Bhatia** | | |
| Phone #: | **212.524.5034** | E-mail Address: | **raspreet.bhatia@gmlaw.com** |
| Fax #: | | Work Address: | **590 Madison Avenue** |
| | | | **Suite 1800** |
| | | | **New York, NY 10022** |

## E-mail Notifications

An e-mail notification regarding this filing has been sent to the following address(es) on 08/10/2018 02:39 PM:

**BHATIA, RASPREET - raspreet.bhatia@gmlaw.com**

**FRANK, THOMAS JAMES - TFrank@friedmanpc.com**

**HASBANI, RAFI - hllawpc@gmail.com**

---

Audrey I. Pheffer, Queens County Clerk and Clerk of the Supreme Court - apheffer@nycourts.gov
Phone: 718-298-0173, 718-298-0601      Website: https://www.nycourts.gov/COURTS/11jd/queensclerk

**NYSCEF Resource Center -  EFile@nycourts.gov**
**Phone:** (646) 386-3033     **Fax:** (212) 401-9146     **Website:** www.nycourts.gov/efile

 

# NYSCEF - Queens County Supreme Court
# Confirmation Notice

**710424/2017**

**FV-I, INC. IN TRUST FOR MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC - v. - LUIS E PALAGUACHI et al**

**Assigned Judge: Ernest F Hart**

**SILVER, JASON DAVID - Jason.silver@gmlaw.com**

**NOTE: If submitting a working copy of this filing to the court, you must include as a notification page firmly affixed thereto a copy of this Confirmation Notice.**

Audrey I. Pheffer, Queens County Clerk and Clerk of the Supreme Court - apheffer@nycourts.gov
Phone: 718-298-0173, 718-298-0601    Website: https://www.nycourts.gov/COURTS/11jd/queensclerk

NYSCEF Resource Center - EFile@nycourts.gov
Phone: (646) 386-3033    Fax: (212) 401-9146    Website: www.nycourts.gov/efile

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

---------------------------------------------------------------------X

FV-1, INC., IN TRUST FOR MORGAN STANLEY
MORTGAGE CAPITAL HOLDINGS LLC,                    **INDEX NO. 710424/2017**

                    Plaintiff(s),

        -against-                                 **REPLY TO DEFENDANT'S**
                                                  **DEMAND FOR DISCOVERY**
LUIS E. PALAGUACHI; ROSA E. PALAGUACHI;           **AND INSPECTION**
NUBE LAPORTE; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE
FOR FIRST NATIONAL BANK OF ARIZONA;
CRIMINAL COURT OF THE CITY OF NEW YORK;
NEW YORK STATE DEPARTMENT OF TAXATION
 AND FINANCE; FIA CARD SERVICES; NEW
YORK CITY ENVIRONMENTAL CONTROL
BOARD; TRANSIT ADJUDICATION BUREAU;
GUSTAVIA HOME LLC; and "JOHN DOE #1"
through "JOHN DOE #10," said names being
fictitious and unknown to plaintiff, intended to be
possible tenants or occupants of the premises, or
corporations, persons, or other entities having or
claiming a lien upon the mortgaged premises,

                    Defendant(s).

---------------------------------------------------------------------X

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO
## DEFENDANTS' NOTICE FOR DISCOVERY AND INSPECTION

        Pursuant to Article 31 of the CPLR, Plaintiff ("Plaintiff"), FV-1, INC., IN TRUST FOR

MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC by and through its counsel,

**GREENSPOON MARDER LLP** hereby objects and responds to Defendant's **GUSTAVIA**

**HOME, LLC** ("Defendant") Notice for Discovery and Inspection, served on July 20, 2018,

2018 as follows:

## GENERAL OBJECTIONS

1.      Plaintiff generally objects to the Production Demands to the extent it attempts to impose obligations other than beyond those imposed or authorized by the New York Civil Practice Law and Rules (the "CPLR").

2.      Plaintiff generally objects to the Production Demands on the grounds that the demands are (a) overly broad, (b) unduly burdensome and oppressive, and (c) seek information and/or documents that are not material and necessary in the prosecution or defense of this action.

3.      Plaintiff generally objects to the Production Demands to the extent they seek disclosure of information and/or documents protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable protection or privilege. Disclosure of information as to which a privilege could be asserted shall not constitute a waiver of any claim or privilege that Plaintiff may have as to any other information, and Plaintiff reserves the right to recall any such privileged documents inadvertently produced.

4.      Plaintiff objects to the Production Demands to the extent that it seeks confidential and proprietary personal or business documents.

5.      Any disclosure by Plaintiff in response to an otherwise objectionable request of the Production Demands shall neither be deemed nor constitute a waiver of Plaintiff's general objections.

6.      This Response is based upon information presently known to Plaintiff, and Plaintiff reserves the right to correct, supplement or amend its Responses and to rely on documents or information that may come to its attention in the future.

7.      Plaintiff's production of any information or document in response to the Production Demands is not a concession as to the admissibility of such information or document. Plaintiff reserves all objections until the time of trial.

8.      Plaintiff's failure to object to particular items requested in the Production Demands or its response indicating that any such documents will be or have been produced should not be construed as a representation that there are documents in existence responsive to the particular request.

9.      Each of the foregoing General Objections shall be deemed incorporated herein in response to each of the specific requests as applicable.

10.     The Responses to the Production Demands set forth below shall be deemed to incorporate, and shall not be deemed a waiver of, the foregoing General Objections:

**SPECIFIC OBJECTIONS AND**

**RESPONSES TO DEMAND FOR PRODUCTION**

**Production Request No. 1:**

11.     Without waiver to any objection, Plaintiff has provided information relevant to paying off the instant loan herein as **Exhibit A.**

**Production Request No. 2:**

12.     Plaintiff objects to this Request on the grounds that it is overly broad and not tailored to result in the discovery of any relevant information or evidence to the instant action. Moreover, said document request fails to specify the information or documents required with reasonable particularity.

**Production Request No. 3 and 4:**

13.     A true and accurate copy of the note and mortgage has been provided to all parties as annexed to the Summons and Complaint.

14.     Without waiver to any objection, Plaintiff has provided a copy of the note and mortgage herein as **Exhibit B.**

**Production Request No. 5:**

15.     A true and accurate copy of the assignments of mortgage have been provided to all parties as annexed to the Summons and Complaint.

16.     Without waiver to any objection, Plaintiff has provided a copy of the assignments of mortgage herein as **Exhibit C.**

**Production Request No. 6 and 7:**

17.     Plaintiff objects to this Request on the grounds that it is irrelevant and not tailored to result in the discovery of any relevant information or evidence.

**Production Request No. 8 and 9:**

18.     Plaintiff objects to this Request on the grounds that it is overly broad and not tailored to result in the discovery of any relevant information or evidence to the instant action. Moreover, said document request fails to specify the information or documents required with reasonable particularity.

19.     Lastly, discovery demands that use descriptions such as "any," "all," or "any and all" are palpably improper. *See Hudson Valley Tree, Inc. v Barcana, Inc.*, 114 AD2d 400, 494 NYS2d 124 (2d Dep't 1985); *see also Jonassen v A.M.F., Inc.*, 104 AD2d 484, 479 NYS2d 81 (2d Dep't 1984); *see also Hochheiser v Alin*, 2015 NY Slip Op. 31395 at *3 (Suffolk Sup. Ct., July 18, 2015).

**Production Request No. 10:**

20.     Without waiver of any objection, annexed hereto, correspondence sent to any defendant regarding the default of this loan was provided for in the Filed Summons and Complaint.

**Production Request No. 11:**

21.     Plaintiff objects to this Request on the grounds that it is overly broad and not tailored to result in the discovery of any relevant information or evidence to the instant action. Moreover, said document request fails to specify the information or documents required with reasonable particularity.

22.     Lastly, discovery demands that use descriptions such as "any," "all," or "any and all" are palpably improper. *See Hudson Valley Tree, Inc. v Barcana, Inc.*, 114 AD2d 400, 494 NYS2d 124 (2d Dep't 1985); *see also Jonassen v A.M.F., Inc.*, 104 AD2d 484, 479 NYS2d 81 (2d Dep't 1984); *see also Hochheiser v Alin*, 2015 NY Slip Op. 31395 at *3 (Suffolk Sup. Ct., July 18, 2015).

**Production Request No. 12 and 13:**

23.     Without waiver of any objection above, the documents and notices related to the previous foreclosure action filed in Queens County bearing Index No. 28894/2010 is a matter of public record, and said records are retrievable through the County Court.

*Page left blank intentionally*

## RESERVATION OF RIGHTS

Plaintiff reserves the right to correct, supplement or amend the response contained herein.

**Dated: August 10, 2018**
**New York, New York**

**GREENSPOON MARDER LLP**
*Attorneys for Plaintiff*

By: _____

Raspreet Bhatia, Esq.
IBM Building
590 Madison Avenue, Suite 1800
New York, New York 10022
P: (212) 524-5000

# EXHIBIT A

# GreenspoonMarder

Trade Centre South, Suite 700
100 W. Cypress Creek Road
Fort Lauderdale, Florida 33309-2140
Phone: 954.491.1120
Fax: 954.771.9264

### MORTGAGE SATISFACTION OFFER OF SETTLEMENT-
### OFFER GOOD THROUGH 08/31/2018

August 10, 2018

Rafi Hasbani, Esq.
Cornell St. Hempstead, LLC
450 Seventh Ave
Suite 1408
New York, NY 10123

Re:

> **Specialized Loan Servicing Loan Number: 1012044411**
> **Mortgagor(s): PALAGUACHI, LUIS**
> **Property Address: 90 -34 205TH ST, HOLLIS, New York  11423**
> **Attorney/Trustee File No.: 44444.0002**
> **Amount to Settle and Satisfy the Mortgage: $1,051,803.59- Offer Valid**
> **Through 08/31/2018**

This letter responds to your request for an offer of settlement of the above referenced loan.  This offer is being made for settlement purposes.

The following is an itemized breakdown of the amounts included in the settlement offer.  Please note, this settlement quote is being offered valid through the future date of 08/31/2018 and as such includes amounts not currently due and owed by you on the account, but anticipated to come due on or before 08/31/2018.  If you would like a statement of the account which only includes the amounts currently due and owed on the account please contact this office at (888) 491-1120.

| Description | Amount |
|---|---|
| Principal Balance | $608,000.00 |
| Accrued Interest to 08/31/2018 | $343,085.34 |
| *131.1781per diem* interest thereafter (may **NOT** subtract from or add to this amount) | |
| Late Charges | $2,553.60 |
| Escrow Advance | $78,412.79 |
| Credit | ($30.44) |
| Corporate Advance (Inspections, Prop Preservation, BPO, paid attorney fees) | |
| | $19,760.80 |
| Actual/Incurred Attorney Foreclosure Fees | $0.00 |
| Actual/Incurred Foreclosure Costs | $21.50 |

## TOTAL AMOUNT TO SETTLE THE ACCOUNT AND SATISFY THE MORTGAGE VALID THROUGH 08/31/2018 is $1,051,803.59

**PAYMENT INSTRUCTIONS**.  Payment must be submitted in the form of a **Certified Cashier's Check(s) and/or money order(s) and/or Direct Wire Transfer** and must be made payable to "**Specialized Loan Servicing**".  If the payment is in the form of a **Bank Wire Transfer** the transfer should be made following the attached wiring instructions.  The payoff funds will be returned if any portion of the funds is in the form of a Personal Check or an Attorney Trust Account Check.  After payoff, you may be required to sign appropriate documents and take other requested action to assist in obtaining a withdrawal of the foreclosure. **\*\*Although it is not required, we recommend you utilize either Federal Express or UPS Next Day, for delivery of your funds, with Signature Required, for the most efficient and traceable delivery of your package to the firm**.  Any associated Overnight mailing fees are the responsibility of the borrower.

Yours very truly,


GREENSPOON MARDER, P.A.

**This is a Communication from a debt collector. Specifically, this Law Firm is the debt collector. The debt collector is attempting to collect a debt and any information obtained will be used for that purpose.**

# EXHIBIT B






ORIGINAL

## InterestFirst℠ NOTE

| June 8, 2007 | FAIRFAX | VA |
|---|---|---|
| [Date] | [City] | [State] |

**90-34 205th Street, Hollis, NY   11423**

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **608,000.00**     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **First National Bank of Arizona**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     **7.875 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first **120**     months, and then will consist of principal and interest.

I will make my monthly payment on the **1st**     day of each month beginning on **August 1, 2007**     . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on **July 1, 2037**     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. BOX 62768, PHOENIX, AZ 85085-2768**
     or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **3,990.00**     for the first **120**     months of this Note, and thereafter will be in the amount of U.S. $ **5,038.36**    . The Note Holder will notify me prior to the date of change in monthly payment.

**4. BORROWER'S RIGHT TO PREPAY** THIS SECTION IS SUPERCEDED BY THE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment

**NEW YORK InterestFirst FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT**

-836N(NY) (0105)     Form 3271.33 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3     Initials:

unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2.000%** of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.



## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
Luis Palaguachi                -Borrower        Rosa Palaguachi                -Borrower

        LEP                                             REP

_____ (Seal)        _____ (Seal)
                               -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                       -Borrower

*[Sign Original Only]*



## ADDENDUM TO NOTE
### (Borrower's Right to Prepay; Prepayment Charge)

THIS ADDENDUM is made this 8th day of June, 2007, and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

The Section of the Note regarding the Borrower's Right to Prepay is modified to provide that, subject to the Prepayment penalty provided below, I have the right to make payments of principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.

If I make a partial Prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a partial Prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within the first sixty (60) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX (6) months advance interest on the amount prepaid which is in excess of TWENTY percent (20%) of the original principal amount of the loan.

No Prepayment penalty will be assessed for any Prepayment made after the Penalty Period. No Prepayment penalty will be assessed with any Prepayment that is (a) concurrent with a bona fide sale of the Property securing this Note to an unrelated third party and (b) made after the first twelve months of the loan term. The Note Holder may require reasonable documentation at the time identifying the Prepayment as being in connection with the sale of the Property. A Prepayment penalty will be assessed in connection with a Prepayment made during the first twelve months of the Penalty Period, regardless of whether the Property has been sold.

All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.


_____ · 6/8/07        _____ · 6/8/07
Luis Palaguachi                    Date          Rosa Palaguachi                     Date
E.                                               E.
     L E P                                              R E P

_____                 _____
                        Date                                             Date


7/6/2004                                          Addendum to Note Multi-State
                                                       Form 3020 (Rev.)

X 2000274537

## Allonge to Note

Loan #:      X
Borrower:    LUIS E. PALAGUACHI AND ROSA E. PALAGUACHI
Address:      90-34 205TH STREET
                HOLLIS, NY 11423

Loan Amount: $608,000.00

Allonge to one certain note dated June 8, 2007 and executed by LUIS E. PALAGUACHI AND
ROSA E. PALAGUACHI.

Pay to the order of  _____ its successor and/or assigns
without recourse in any event.

Without recourse

 JPMORGAN CHASE BANK, N.A. S/B/M TO CHASE HOME FINANCE, LLC S/B/M TO
CHASE MANHATTAN MORTGAGE CORPORATION ATTORNEY-IN-FACT FOR WELLS
FARGO BANK, N.A. S/B/M TO WELLS FARGO BANK OF ARIZONA, N.A. F/K/A FIRST
INTERSTATE BANK OF ARIZONA, N.A. F/K/A FIRST NATIONAL BANK OF ARIZONA

_____

SCOTT SYKES
VICE PRESIDENT

103947676
Palaguachi
CARR

KASOTA
2013-10-PRIV

Return To:
First National Bank of
Arizona
P.O. Box 66604
Phoenix, AZ 85082
Prepared By:
Bao Le

*Queens.*
*BIK.10485*
*Lot: 88*
*ALS-2543*

*MM Tax /*
*$131.94.*

—————————— [Space Above This Line For Recording Data] ——————————

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated June 8, 2007
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."

> Luis E. Palaguachi as to undivided 25% interest and Rosa E. Palaguachi as to undivided 25% interest
> And Nube E. Laporte as to undivided 50% interest as tenants in common.

whose address is 90 -34 205th Street, Hollis, NY 11423

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender." First National Bank of Arizona .

will be called "Lender." Lender is a corporation or association which exists under the laws of
United States of America            . Lender's address is

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

(VMP)-6A(NY) (0005).07
Page 1 of 17                    Initials: *REP  LEP—N.E.L.*
VMP Mortgage Solutions, Inc. (800)521-7291

(E) "Note." The note signed by Borrower and dated June 8, 2007 , will be called
the "Note." The Note shows that I owe Lender six hundred eight thousand and 00/100

Dollars (U.S. $ 608,000.00 )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments
and to pay the debt in full by July 1, 2037 .
(F) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."
(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."
(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."
(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."
(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."
(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."
(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.
(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note,
and (ii) any amounts under Section 3 will be called "Periodic Payment."
(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

Initials: BEP LEP _ NEL

-6A(NY) (0005).07          Page 2 of 17          Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 90-34 205th Street

[Street]

Hollis                           [City, Town or Village], New York 11423          [Zip Code].
This Property is in Queens                                    County. It has the following legal
description: SEE ATTACHED LEGAL DESCRIPTION

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

⊕-6A(NY) (0005).07                    Page 3 of 17          Initials: $\mathcal{B}\,EP$          Form 3033 1/01

$\mathcal{LEP}$ - N. E. L.

*Atlantis Land Services Confidential*                                                                                                          *Page 2*

**Atlantis Land Services**
Schedule A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of 205th Street, distant 367 feet northerly from the corner formed by the intersection of the northerly side of 93rd Avenue and the westerly side of 205th Street;

RUNNING THENCE westerly parallel with 93rd Avenue, 100 feet

THENCE northerly parallel with 205th Street, 33.17 feet;

THENCE easterly parallel with 93rd Avenue 100 feet to the westerly side of 205th Street;

THENCE southerly along the westerly side of 205th Street 33.17 feet to the point or place of BEGINNING.

Section: Block: 10485 Lot: 88 County: Queens

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

VMP-6A(NY) (0005).07 — Page 4 of 17 — Initials: *REP* — Form 3033 1/01

*CEP_ U, E, L,*

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Ⓥ -6A(NY) (0005).07                    Page 5 of 17              Initials: _BEP_     Form 3033 1/01
                                                                 _LEP. MEIL_

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

VMP®-6A(NY) (0005).07                          Page 5 of 17            Initials: REP     Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

VMP -6A(NY) (0005).07                  Page 7 of 17                  Initials: _REP_   Form 3033 1/01
                                                                              _LEP_ _N.E.L_.

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

VMP®-6A(NY) (0005).07                    Page 8 of 17              Initials: _REP_   Form 3033 1/01
                                                                   LEP, N.E.L.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

-6A(NY) (0005).07                    Page 10 of 17            Initials: REP
                                                                     LEP    N.E.L.

Form 3033 1/01

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

VMP-6A(NY) (0005).07                                  Page 11 of 17                   Initials: *REP*                  Form 3033 1/01
                                                                                         *LEP*   *NEL*

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required** under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

-6A(NY) (0005).07                    Page 12 of 17                  Initials: *REP*
                                                                          *LEB - NEL.*

                                                                   Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

VMP®-6A(NY) (0005).07                     Page 15 of 17          Initials: *R EP*          Form 3033 1/01

*LEP - N. E. L.*

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Luis Palaguachi                  -Borrower

_____          _____ (Seal)
                                          Rosa Palaguachi                  -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower         Nube E Caputi                    -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                          -Borrower

_____ (Seal)           _____ (Seal)
                        -Borrower                                          -Borrower

-6A(NY) (0005).07                  Page 16 of 17                  Form 3033 1/01

STATE OF NEW YORK,                                      County ss: Queens

On the   8th   day of   June   2007          before me, the undersigned, a notary
public in and for said state, personally appeared **Luis Palaguachi & Rosa Palaguachi** &
Nube E. Laporte

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

Theresa M. DeMilt
New York State Notary Public
#01DE6101857
Qualified In Nassau County
Commission Exp. Nov. 17, 2007

SEAL

VMP-6A(NY) (0005).07          Page 17 of 17          Initials: REP          Form 3033 1/01

LEP. NEL.

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 8th       day of June, 2007       ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to First National Bank of
Arizona

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at: 90-34 205th Street, Hollis, NY   11423

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

VMP-57R (0411)
Page 1 of 3       Initials: REP L E P - N. E L .
VMP Mortgage Solutions, Inc.
(800)521-7291

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

-57R (0411)                          Page 2 of 3                          Initials: _R.E.P_

Form 3170 1/01

_LE.P. N E L._

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained
in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
Luis Palaguachi          -Borrower          Rosa Palaguachi          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                          -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                          -Borrower

VMP-57R (0411)                    Page 3 of 3                    Form 3170 1/01

# EXHIBIT C

**FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM**    INDEX NO. 710424/2017

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 07/28/2017

---

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2011012800340001001E0A59

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

Document ID: 2011012800340001    Document Date: 03-16-2010    Preparation Date: 01-28-2011
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| WEB TITLE AGENCY ***PICK UP*** | WEB TITLE AGENCY ***PICK UP*** |
| 69 CASCADE DRIVE | 69 CASCADE DRIVE |
| KNOWLTON BLDG., SUITE 202 | KNOWLTON BLDG., SUITE 202 |
| ROCHESTER, NY 14614 | ROCHESTER, NY 14614 |
| 585-454-4770 | 585-454-4770 |
| miulianella@webtitle.us | miulianella@webtitle.us 10-23341 |

### PROPERTY DATA

Borough      Block Lot      Unit    Address
QUEENS       10485 88    Entire Lot    90-34 205TH STREET
             Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN: 2007000399278

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MERS, INC | J.P. MORGAN ACQUISITION CORP. |
| P.O. BOX 2026 | C/O BAC HOME LOANS SERVICING, LP, 7105 |
| FLINT, MI 48501-2026 | CORPORATE DRIVE PTX-C35 |
|  | PLANO, TX 75024 |

x Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed      02-02-2011 15:13 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | 2011000039691 | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M Hill*

*City Register Official Signature*

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM   INDEX NO. 710424/2017
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/28/2017

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**



2011012800340001001C08D9

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)     PAGE 2 OF 4**

Document ID: 2011012800340001          Document Date: 03-16-2010          Preparation Date: 01-28-2011
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**
**ASSIGNOR/OLD LENDER:**
FIRST NATIONAL BANK OF ARIZONA
P.O. BOX 2026
FLINT, MI 48501-2026

Case 1:18-cv-06800-FB-SJB   Document 22-3   Filed 03/08/19   Page 44 of 70 PageID #: 965

35133

RECORD & RETURN TO:
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP
20 West Main Street
Bay Shore, New York 11706

BLOCK:10485
LOT:88
COUNTY: Queens

## ASSIGNMENT OF MORTGAGE

Know that **Mortgage Electronic Registration Systems, Inc. as nominee for First National Bank of Arizona** ("Assignor"), having a place of business at P.O. Box 2026, Flint, MI 48501-2026, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by **J.P. Morgan Mortgage Acquisition Corp.,** ("Assignee"), having a place of business at c/o BAC Home Loans Servicing, LP, 7105 Corporate Drive, PTX-C35, Plano, TX 75024, does hereby grant, bargain, sell, assign, transfer, and convey unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Queens, for the premises known as 90-34 205th Street, Hollis, NY 11423, together with the note or obligation described and secured by said mortgage, and the monies due and to grow due thereon with the interest, as follows:

MORTGAGOR:      Luis E. Palaguachi and Rose E. Palaguachi
MORTGAGEE:      Mortgage Electronic Registration Systems, Inc. as nominee for First National Bank of Arizona
AMOUNT:         608,000.00
DATE:           June 8, 2007
RECORDED:       August 2, 2007
CRFN:           2007000399278

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her/his hand this 16 day of March, 2010.

IN PRESENCE OF:

Tonia Williams

Mortgage Electronic Registration Systems, Inc. as nominee for First National Bank of Arizona:

BY: _____
     **Dana Heisel**
Title: _____**Vice President**_____

STATE OF   **Ohio**          )
                             )  SS.:
COUNTY OF   **Franklin**      )

On the 16 day of March, in the year 2010, before me, the undersigned, personally appeared **Dana Heisel**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in **Franklin** County.

Notary Public

LATRESA D. PAYNE
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Franklin County
My Comm. Exp. 9/16/12

SEAL

Our file No.: 01-035133-F00

10-23341

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM

NYSCEF DOC. NO. 2

INDEX NO. 710424/2017

RECEIVED NYSCEF: 07/28/2017

Universal Abstract Agency
20 West Main Street
Bayshore, N.Y. 11706

### SCHEDULE A

### DESCRIPTION OF MORTGAGED PREMISES

**Title No.** U01-035133

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of 205th Street, distant 367 feet northerly from the corner formed by the intersection of the northerly side of 93rd Avenue and the westerly side of 205th Street;

RUNNING THENCE westerly parallel with 93rd Avenue, 100 feet;

THENCE northerly parallel with 205th Street, 33.17 feet;

THENCE easterly parallel with 93rd Avenue 100 feet to the westerly side of 205th Street;

THENCE southerly along the westerly side of 205th Street 33.17 feet to the point or place of BEGINNING.

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM   INDEX NO. 710424/2017
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 07/28/2017

**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2014031000029001001ED4CF

## RECORDING AND ENDORSEMENT COVER PAGE        PAGE 1 OF 3

| | |
|---|---|
| Document ID: 2014031000029001 | Document Date: 03-05-2014   Preparation Date: 03-12-2014 |
| Document Type: ASSIGNMENT, MORTGAGE | |
| Document Page Count: 2 | |

| PRESENTER: | RETURN TO: |
|---|---|
| CT LIEN SOLUTIONS<br>P.O. BOX 29071<br>SUITE 700 (42293019)<br>GLENDALE, CA 91209<br>800-331-3282<br>CLS-CTLSACCOUNTING@WOLTERSKLUWER.COM | CT LIEN SOLUTIONS<br>P.O. BOX 29071<br>SUITE 700 (42293019)<br>GLENDALE, CA 91209<br>800-331-3282<br>CLS-CTLSACCOUNTING@WOLTERSKLUWER.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 10485 | 88 | Entire Lot | 90-34 205TH STREET |

Property Type: OTHER

### CROSS REFERENCE DATA

CRFN:   2007000399278

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| J.P. Morgan Mortgage Acquisition Corp.<br>700 Kansas Lane, MC 8000<br>Monroe, LA 71203 | Christiana Trust, A Division of Wilmington Savings<br>1610 East St. Andrews Place, Suite B150H<br>Santa Ana, CA 92705 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $          0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $          0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $          0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed        03-19-2014 13:56
City Register File No.(CRFN):
2014000095400

*Annette M Hill*

*City Register Official Signature*

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM    INDEX NO. 710424/2017
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 07/28/2017

Return To :
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA 91209-9071
Phone #: 800-331-3282

This Instrument Prepared By:
JPMC Mortgage
KATASHA GILBERT
780 KANSAS LANE 2ND FLOOR
Monroe , LA 71203

## NEW YORK ASSIGNMENT OF MORTGAGE



For Value Received, the undersigned holder of a Mortgage, J.P. Morgan Mortgage Acquisition Corp., ( herein "Assignor") with an address at 700 Kansas Lane, MC 8000, Monroe, LA, 71203, does hereby grant, sell, assign, transfer and convey, unto Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Normandy Mortgage Loan Trust, Series 2013-10 , whose address is 1610 East St. Andrews Place, Suite B150H, Santa Ana, CA, 92705 , all beneficial interest under a certain Mortgage dated 06/08/2007 and recorded on 08/02/2007, made and executed by Luis E. Palaguachi and Rosa E Palaguachi and Nude E. Laporte  to and in favor of Mortgage Electronic Registration Systems ("MERS") as NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA with an address at 1901 East Voorhees Street, Suite C, Danville, IL, 61834, upon the following described property situated in Queens County, State of New York:
Property Address: 9034 205th St, Hollis, NY, 11423

MORTGAGE DATED 06/08/2007 MADE BY Luis E. Palaguachi and Rosa E Palaguachi and Nude E. Laporte TO Mortgage Electronic Registration Systems ("MERS") as NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA and recorded on August 02, 2007, CRFN/Instrument #:2007000399276.

Lot: 88 Block: 10485

such Mortgage having been given to secure payment of Six Hundred Eight Thousand dollars and Zero cents ($608,000.00), which Mortgage is of record in  No. 2007000399276, in the Office of the County Clerk or Register of Queens County, State of New York.

This assignment is not subject to the requirements of section two hundred seventy-five of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee; its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 03/05/2014.

Assignor;
JPMorgan Chase Bank, National Association as A/I/F for JPMorgan Mortgage Acquisition Corp.

By:  _____
Ladarius Chisley
Its: Vice President

Page # 1  42293019 RPY Ref# 790525'25497 NY051 Queens County 2000274537 Carrington IB

INDEX NO. 710424/2017

RECEIVED NYSCEF: 07/28/2017

STATE OF LA, Ouachita Parish.

On 03/05/2014 before me, the undersigned, personally appeared Ladarius Chisley, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me the he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public: Tommie J. Nelson

Tommie J. Nelson
Notary I.D. #067566
Lincoln Parish, Louisiana
Commissioned for Life

SEAL

Page # 2 42233019 RPY Ref# 790526 25497 NY081 Queens County 2000274537 Carrington IB

53 of 160

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2016031000312001001EF8CB

### RECORDING AND ENDORSEMENT COVER PAGE
PAGE 1 OF 6

Document ID: 2016031000312001
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 5

Document Date: 02-18-2016

Preparation Date: 03-10-2016

**PRESENTER:**
MERIDIAN ASSET SERVICES
780 94TH AVENUE NORTH
SUITE 102
SAINT PETERSBURG, FL 33702
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
MAS
780 94TH AVENUE N. SUITE 102
ST.PETERSBURG, FL 33702
SUPPORT@SIMPLIFILE.COM

### PROPERTY DATA
Borough: QUEENS | Block: 10485 | Lot: 88 | Entire Lot | Unit | Address: 90-34 205TH STREET
Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA
CRFN: 2007000399278

### PARTIES
**ASSIGNOR/OLD LENDER:**
CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS
500 DELAWARE AVENUE 11TH FLOOR
WILMINGTON, DE 19801

**ASSIGNEE/NEW LENDER:**
NORMANDY MORTGAGE AQUISITION COMPANY, LLC
11755 WILSHIRE BLVD. SUITE 1700
LOS ANGELES, CA 90025

### FEES AND TAXES
| Mortgage : | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | |
| Taxable Mortgage Amount: | $ | 0.00 | |
| Exemption: | | | |
| TAXES: County (Basic): | $ | 0.00 | |
| City (Additional): | $ | 0.00 | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 62.00 | |
| Affidavit Fee: | $ | 0.00 | |

Filing Fee: $ 0.00
NYC Real Property Transfer Tax: $ 0.00
NYS Real Estate Transfer Tax: $ 0.00

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed 03-15-2016 08:41
City Register File No.(CRFN): 2016000089774

*City Register Official Signature*

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM          INDEX NO. 710424/2017
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/28/2017

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94ᵗʰ Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

_____ Space above for Recorder's use _____

Section: N/A Lot: 88 Block: 10485





## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-10**, whose address is **500 DELAWARE AVENUE, 11TH FLOOR, WILMINGTON, DE 19801**, (ASSIGNOR), does hereby grant, assign and transfer to **NORMANDY MORTGAGE ACQUISITION COMPANY, LLC**, whose address is **C/O THE PALISADES GROUP LLC, 11755 WILSHIRE BLVD, SUITE 1700, LOS ANGELES, CA 90025**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 6/8/2007
Original Loan Amount: **$608,000.00**
Executed by (Borrower(s)): **LUIS E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST, ROSA E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND NUBE E. LAPORTE AS TO UNDIVIDED 50% INTEREST, AS TENANTS IN COMMON**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: 2007000399278 in the Office of County Recorder of **QUEENS** County, NY, Recorded on 8/2/2007.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **90-34 205TH STREET, HOLLIS, NEW YORK 11423**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

OT 15-1

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM

NYSCEF DOC. NO. 2

INDEX NO. 710424/2017

RECEIVED NYSCEF: 07/28/2017

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 2/18/16

CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-10, BY NORMANDY MORTGAGE ACQUISITION COMPANY, LLC, ITS APPOINTED ATTORNEY-IN-FACT

By: Akari Namba
Title: Authorized Signatory

Witness Name: DAVE DIAZ

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _____
County of _____

On _____, before me, _____, a Notary Public, personally appeared _____, of/for CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-10, BY NORMANDY MORTGAGE ACQUISITION COMPANY, LLC, ITS APPOINTED ATTORNEY-IN-FACT, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. I further certify _____, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____
(Notary Name): _____
My commission expires: _____

See attached Notary Certificate

2/18/16



# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of _____ LOS ANGELES _____ )

On FEBRUARY 18, 2016 _____ before me, GABRIELLA S LOUGHNOT, Notary Public
_____
                                          (insert name and title of the officer)

personally appeared ____ AKARI NAMBA _____.
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

GABRIELLA S. LOUGHNOT
COMM. #2034242
Notary Public - California
Los Angeles County
My Comm. Expires July 21, 2017

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM
NYSCEF DOC. NO. 2

INDEX NO. 710424/2017

RECEIVED NYSCEF: 07/28/2017

## EXHIBIT "A"

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of 205th Street, distant 367 feet northerly from the corner formed by the intersection of the northerly side of 93rd Avenue and the westerly side of 205th Street;

RUNNING THENCE westerly parallel with 93rd Avenue, 100 feet

THENCE northerly parallel with 205th Street, 33.17 feet;

THENCE easterly parallel with 93rd Avenue 100 feet to the westerly side of 205th Street;

THENCE southerly along the westerly side of 205th Street 33.17 feet to the point or place of BEGINNING.

### Assignment Chain

Mortgage
Lender:         MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
                FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS

Borrower:       LUIS E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND ROSA E.
                PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND NUBE E. LAPORTE AS TO
                UNDIVIDED 50% INTEREST AS TENANTS IN COMMON.

Amount:         $608,000.00

Recorded:       08/02/2007; INSTR#: 2007000399278


Assigned From:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
                FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS

To:             JPMORGAN MORTGAGE ACQUISITION CORPORATION

Recorded:       02/02/2011 ; INSTR# 2011000039691


Assigned From:  JPMORGAN MORTGAGE ACQUISITION CORPORATION

To:             CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY,
                FSB, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-10

Recorded:       03/19/2014 ; INSTR# 2014000095400


Assigned From:  CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY,
                FSB, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-10

OT 15-

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM          INDEX NO. 710424/2017

NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/28/2017

To:              NORMANDY MORTGAGE ACQUISITION COMPANY, LLC
Recorded:        To be recorded concurrently herewith

Assigned From:   NORMANDY MORTGAGE ACQUISITION COMPANY, LLC
To:              BAYVIEW LOAN SERVICING, LLC
Recorded:        To be recorded concurrently herewith

OT 15

**FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM**   INDEX NO. 710424/2017

NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/28/2017

---

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2016031000312002001EF88F

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 6 |
|---|---|

| Document ID: 2016031000312002 | Document Date: 02-18-2016 | Preparation Date: 03-10-2016 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 5

| PRESENTER: | RETURN TO: |
|---|---|
| MERIDIAN ASSET SERVICES<br>780 94TH AVENUE NORTH<br>SUITE 102<br>SAINT PETERSBURG, FL 33702<br>SUPPORT@SIMPLIFILE.COM | MAS<br>780 94TH AVENUE N. SUITE 102<br>ST.PETERSBURG, FL 33702<br>SUPPORT@SIMPLIFILE.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 10485 | 88 | Entire Lot | 90-34 205TH  STREET |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN:   2007000399278

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| NORMANDY MORTGAGE AQUISITION COMPANY,<br>LLC<br>11755 WILSHIRE BLVD. SUITE 1700<br>LOS ANGELES, CA 90025 | BAYVIEW LOAN SERVICING LLC<br>4425 PONCE DE LEON BLVD.5TH FLOOR<br>CORAL GABLES, FL 33146 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed        03-15-2016 08:41 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | 2016000089775 | |
| Recording Fee: | $ | 62.00 | | |
| Affidavit Fee: | $ | 0.00 | *Jnnette M Hill* | |
| | | | ***City Register Official Signature*** | |

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94ᵗʰ Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Section: N/A Lot: 88 Block: 10485 ___ Space above for Recorder's use ___



2003280

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **NORMANDY MORTGAGE ACQUISITION COMPANY, LLC,** whose address is **C/O THE PALISADES GROUP LLC, 11755 WILSHIRE BLVD, SUITE 1700, LOS ANGELES, CA 90025,** (ASSIGNOR), does hereby grant, assign and transfer to **BAYVIEW LOAN SERVICING, LLC,** whose address is **4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL 33146,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 6/8/2007
Original Loan Amount: $608,000.00
Executed by (Borrower(s)): **LUIS E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST, ROSA E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND NUBE E. LAPORTE AS TO UNDIVIDED 50% INTEREST, AS TENANTS IN COMMON**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume N/A, Page N/A,
Document/Instrument No: 2007000399278 in the Office of County Recorder of QUEENS County, NY, Recorded on 8/2/2007.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **90-34 205TH STREET, HOLLIS, NEW YORK 11423**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*



FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM          INDEX NO. 710424/2017
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 07/28/2017

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: ___2/18/16___

NORMANDY MORTGAGE ACQUISITION COMPANY, LLC

By: _____                     Witness Name: _____
**Akari Namba**
Title: ___**Authorized Signatory**___

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of        _____
County of      _____

On _____, before me, _____, a Notary Public, personally appeared _____, _____ of/for NORMANDY MORTGAGE ACQUISITION COMPANY, LLC, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct. I further certify _____, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____                          **See attached Notary Certificate**
(Notary Name): _____                           G.S.
My commission expires: _____                    2/18/16



FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM
NYSCEF DOC. NO. 2

INDEX NO. 710424/2017

RECEIVED NYSCEF: 07/28/2017

# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ LOS ANGELES _____)

On FEBRUARY 18, 2016 _____ before me, GABRIELLA S LOUGHNOT, Notary Public
_____
(insert name and title of the officer)

personally appeared ___ AKARI NAMBA _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

GABRIELLA S. LOUGHNOT
COMM. #2034242
Notary Public - California
Los Angeles County
My Comm. Expires July 21, 2017

63 of 160

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM

NYSCEF DOC. NO. 2

INDEX NO. 710424/2017

RECEIVED NYSCEF: 07/28/2017

EXHIBIT "A"

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of 205th Street, distant 367 feet northerly from the corner formed by the intersection of the northerly side of 93rd Avenue and the westerly side of 205th Street;

RUNNING THENCE westerly parallel with 93rd Avenue, 100 feet

THENCE northerly parallel with 205th Street, 33.17 feet;

THENCE easterly parallel with 93rd Avenue 100 feet to the westerly side of 205th Street;

THENCE southerly along the westerly side of 205th Street 33.17 feet to the point or place of BEGINNING.

Assignment Chain

| | |
|---|---|
| Mortgage Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS |
| Borrower: | LUIS E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND ROSA E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND NUBE E. LAPORTE AS TO UNDIVIDED 50% INTEREST AS TENANTS IN COMMON. |
| Amount: | $608,000.00 |
| Recorded: | 08/02/2007; INSTR#: 2007000399278 |
| | |
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS |
| To: | JPMORGAN MORTGAGE ACQUISITION CORPORATION |
| Recorded: | 02/02/2011 ; INSTR# 2011000039691 |
| | |
| Assigned From: | JPMORGAN MORTGAGE ACQUISITION CORPORATION |
| To: | CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-10 |
| Recorded: | 03/19/2014 ; INSTR# 2014000095400 |
| | |
| Assigned From: | CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-10 |

 T 15-1

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM    INDEX NO. 710424/2017
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 07/28/2017

To:              NORMANDY MORTGAGE ACQUISITION COMPANY, LLC
Recorded:        To be recorded concurrently herewith

Assigned From:   NORMANDY MORTGAGE ACQUISITION COMPANY, LLC
To:              BAYVIEW LOAN SERVICING, LLC
Recorded:        To be recorded concurrently herewith

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2016080800021001001E9C3B

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

| Document ID: 2016080800021001 | Document Date: 06-01-2016 | Preparation Date: 08-08-2016 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

**PRESENTER:**                          **RETURN TO:**

VSI-SLS                                 VISIONET SYSTEMS,INC
183 INDUSTRY DRIVE                      183 INDUSTRY DRIVE
PITTSBURGH, PA 15275                    PITTSBURGH, PA 15275
SUPPORT@SIMPLIFILE.COM                  SUPPORT@SIMPLIFILE.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 10485 | 88 | Entire Lot | 90-34 205TH  STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN:   2007000399278

### PARTIES

**ASSIGNOR/OLD LENDER:**                **ASSIGNEE/NEW LENDER:**
BAYVIEW LOAN SERVICING LLC              BAYVIEW DISPOSITIONS NA LLC
4425 PONCE DE LEON BLVD 5TH FLOOR       4425 PONCE DE LEON BLVD 5TH FLOOR
CORAL GABLES, FL 33146                  CORAL GABLES, FL 33146

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $              0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $              0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $              0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed         08-09-2016 17:17 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 47.00 | 2016000274257 | |
| Affidavit Fee: | $ | 0.00 | | |

*City Register Official Signature*

Case 1:18-cv-06800-FB-SJB   Document 22-3   Filed 03/08/19   Page 62 of 70 PageID #: 983

**RECORDING REQUESTED BY:**
RICHMOND MONROE GROUP, INC.

**WHEN RECORDED MAIL TO:**

VISIONET SYSTEMS INC
183 INDUSTRY DRIVE
PITTSBURGH PA 15275

177367
TO REF#: 000-42500000000467

## CORPORATE ASSIGNMENT OF MORTGAGE

NY/QUEENS

Assignment Prepared on: June 01, 2016

**ASSIGNOR:** BAYVIEW LOAN SERVICING, LLC by Richmond Monroe Group, Inc. Its Attorney In Fact, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE:** BAYVIEW DISPOSITIONS IVA, LLC, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage dated 6/8/2007, in the amount of $608,000.00, executed by LUIS E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND ROSA E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND NUBE E. LAPORTE AS TO UNDIVIDED 50% INTEREST AS TENANTS IN COMMON. to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS and Recorded: 8/2/2007, Instrument No.: 2007000399278, Book: N/A, Page: N/A in QUEENS County, State of NEW YORK.

Property Address: 90-34 205TH STREET, HOLLIS, NY, 11423
Block: 10485 / Lot: 88

Document References:
- Assignment Dated: 3/16/2010 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS to J.P. MORGAN MORTGAGE ACQUISITION CORP. Recorded: 2/2/2011, Instrument No.: 2011000039691
- Assignment Dated: 3/5/2014 from J.P. MORGAN MORTGAGE ACQUISITION CORP. to WILMINGTON SAVINGS FUND SOCIETY, FSB, (SUCCESSOR BY MERGER TO CHRISTIANA BANK & TRUST COMPANY), AS OWNER TRUSTEE OF THE SECURITY NATIONAL FUNDING TRUST, C/O SN SERVICING CORPORATION Recorded: 3/19/2014, Instrument No.: 2014000095400
- Assignment Dated: 2/18/2016 from WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF SECURITIZED MORTGAGE ASSET LOAN TRUST 2015-2 to NORMANDY MORTGAGE ACQUISITION COMPANY, LLC Recorded: 3/15/2016, Instrument No.: 2016000089774
- Assignment Dated: 2/18/2016 from NORMANDY MORTGAGE ACQUISITION COMPANY, LLC to BAYVIEW LOAN SERVICING, LLC Recorded: 3/15/2016, Instrument No.: 2016000089775

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM    INDEX NO. 710424/2017

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 07/28/2017

Page: 2 of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

BAYVIEW LOAN SERVICING, LLC by Richmond Monroe Group, Inc. its Attorney in Fact
(POA Recorded in QUEENS, NY: 9/5/2014, Instrument No.: 2014000296813 )

On: 6-1-2016

Signature: _____

Name:    Jessica Brown
Title:     Vice President

State of MISSOURI
County of STONE

On 6-1-2016, before me, Toni Eutsler, a Notary Public in and for STONE in the State of
MISSOURI, personally appeared Jessica Brown, Vice President, Richmond Monroe Group, Inc. as
Attorney in Fact for Bayview Loan Servicing, LLC, personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and
that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Toni Eutsler
Notary Expires: 2/24/2018 / #: 14933852

TONI EUTSLER
My Commission Expires
February 24, 2018
Stone County
Commission #14933852

NY/QUEENS



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2016081101477001001EC7DC |

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

| Document ID: 2016081101477001 | Document Date: 06-27-2016 | Preparation Date: 08-11-2016 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| VSI-SLS<br>183 INDUSTRY DRIVE<br>PITTSBURGH, PA 15275<br>SUPPORT@SIMPLIFILE.COM | VISIONET SYSTEMS INC.<br>183 INDUSTRY DRIVE<br>PITTSBURGH, PA 15275<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 10485 | 88 | Entire Lot | 90-34 205TH STREET |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2007000399278
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| BAYVIEW DISPOSITIONS IVA, LLC<br>4425 PONCE DE LEON BLVD, 5TH FLOOR<br>CORAL GABLES, FL 33146 | MORGAN STANLEY MORTGAGE CAPITAL<br>HOLDINGS LLC<br>1585 BROADWAY<br>NEW YORK, NY 10036 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed   08-15-2016 16:38 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | **2016000281547** | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | |

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM        INDEX NO. 710424/2017
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 07/28/2017

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|

2016081101477001001CC55C

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 4 |
|---|---|---|
| Document ID: 2016081101477001 | Document Date: 06-27-2016 | Preparation Date: 08-11-2016 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
CRFN: 2011000039691
CRFN: 2014000095400
CRFN: 2016000089774
CRFN: 2016000089775

RECORDING REQUESTED BY:
RICHMOND MONROE GROUP, INC.

WHEN RECORDED MAIL TO:

VISIONET SYSTEMS INC
183 INDUSTRY DRIVE
PITTSBURGH PA 15275

177367-1

~~13 Ref #: 00042500000073~~

## CORPORATE ASSIGNMENT OF MORTGAGE

NY/QUEENS

Assignment Prepared on: June 01, 2016

**ASSIGNOR: BAYVIEW DISPOSITIONS IVA, LLC**, at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL, 33146

**ASSIGNEE: MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC**, at 1585 BROADWAY, NEW YORK, NY, 10036

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage dated 6/8/2007, in the amount of $608,000.00, executed by LUIS E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND ROSA E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND NUBE E. LAPORTE AS TO UNDIVIDED 50% INTEREST AS TENANTS IN COMMON. to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS and Recorded: 8/2/2007, Instrument No.: 2007000399278, Book: N/A, Page: N/A in QUEENS County, State of NEW YORK.

Property Address: 90-34 205TH STREET, HOLLIS, NY, 11423
Block: 10485 / Lot: 88

Document References:
- Assignment Dated: 3/16/2010 from MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FIRST NATIONAL BANK OF ARIZONA, ITS SUCCESSORS AND ASSIGNS to J.P. MORGAN MORTGAGE ACQUISITION CORP. Recorded: 2/2/2011, Instrument No.: 2011000039691
- Assignment Dated: 3/5/2014 from J.P. MORGAN MORTGAGE ACQUISITION CORP. to WILMINGTON SAVINGS FUND SOCIETY, FSB, (SUCCESSOR BY MERGER TO CHRISTIANA BANK & TRUST COMPANY), AS OWNER TRUSTEE OF THE SECURITY NATIONAL FUNDING TRUST, C/O SN SERVICING CORPORATION Recorded: 3/19/2014, Instrument No.: 2014000095400
- Assignment Dated: 2/18/2016 from WILMINGTON SAVINGS FUND SOCIETY, FSB D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE OF SECURITIZED MORTGAGE ASSET LOAN TRUST 2015-2 to NORMANDY MORTGAGE ACQUISITION COMPANY, LLC Recorded: 3/15/2016, Instrument No.: 2016000089774
- Assignment Dated: 2/18/2016 from NORMANDY MORTGAGE ACQUISITION COMPANY, LLC to BAYVIEW LOAN SERVICING, LLC Recorded: 3/15/2016, Instrument No.: 2016000089775
- Assignment Dated: 06/27/2016   from BAYVIEW LOAN SERVICING, LLC by Richmond Monroe Group, Inc. its Attorney In Fact to BAYVIEW DISPOSITIONS IVA, LLC To Be Recorded Concurrently.

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM    INDEX NO. 710424/2017

NYSCEF DOC. NO. 2                                                              RECEIVED NYSCEF: 07/26/2017

Page: 2 of 2

BAYVIEW DISPOSITIONS IVA, LLC

On: 6/27/16

Signature: _____

Name: _____ Robert G. Hall

Title: _____ Vice President

STATE OF Florida

COUNTY OF Miami-Dade

On JUN 27 2016 before me, **Pamela Vargas**, a Notary Public in and for Miami-Dade in the State of Florida, personally appeared, Robert G. Hall, BAYVIEW DISPOSITIONS IVA, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Pamela Vargas

PAMELA VARGAS
MY COMMISSION # FF 068674
EXPIRES: November 8, 2017
Bonded Thru Notary Public Underwriters

Notary Expires: _____ / #: _____

NY/QUEENS

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM   INDEX NO. 710424/2017
NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 07/28/2017



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2016083000182001001EA748

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID:** 2016083000182001    **Document Date:** 08-10-2016    **Preparation Date:** 08-30-2016
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 1

| PRESENTER: | RETURN TO: |
|---|---|
| VSI-SLS<br>183 INDUSTRY DRIVE<br>PITTSBURGH, PA 15275<br>SUPPORT@SIMPLIFILE.COM | VISIONET SYSTEMS INC.<br>183 INDUSTRY DRIVE<br>PITTSBURGH, PA 15275<br>SUPPORT@SIMPLIFILE.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 10485 | 88 | Entire Lot | 90-34 205TH  STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

**CRFN:** 2007000399278
☒ Additional Cross References on Continuation Page

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORGAN STANLEY MORTGAGE CAPITAL<br>HOLDINGS LLC<br>1585 BROADWAY<br>NEW YORK, NY 10036 | FV-I, INC<br>1585 BROADWAY<br>NEW YORK, NY 10036 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed   08-31-2016 15:49 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | 2016000302349 | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

*Janette M Hill*

*City Register Official Signature*

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM

NYSCEF DOC. NO. 2

INDEX NO. 710424/2017

RECEIVED NYSCEF: 07/28/2017

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**



2016083000182001001CA5C8

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 3 |
|---|---|---|
| Document ID: 2016083000182001 | Document Date: 08-10-2016 | Preparation Date: 08-30-2016 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
**CRFN:** 2016000274004

FILED: QUEENS COUNTY CLERK 07/28/2017 11:48 PM          INDEX NO. 710424/2017

NYSCEF DOC. NO. 2                                                      RECEIVED NYSCEF: 07/28/2017

This Instrument Prepared By:
VISIONET SYSTEMS INC.
After Recording Return To:
VISIONET SYSTEMS INC.
183 INDUSTRY DRIVE
PITTSBURGH, PA 15275
Voice: 1-(412) 927-0226



### Assignment of Mortgage

For value received, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, whose address is 1585 Broadway, New York, NY 10036, hereby grants, assigns, and transfers to: FV-I, Inc. In trust for Morgan Stanley Mortgage Capital Holdings LLC whose address is 1585 Broadway, New York, NY 10036 all beneficial interest under that certain Mortgage dated June 08, 2007 executed by:

Borrower: LUIS E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND ROSA E. PALAGUACHI AS TO UNDIVIDED 25% INTEREST AND NUBE E. LAPORTE AS TO UNDIVIDED 50% INTEREST AS TENENTS IN COMMON, whose address is 90-34 205TH STREET, HOLLIS, NY 11423

For MERS, whose address is 1901 E Voorhees Street, suite C, Danville, IL 61834, as nominee for FIRST NATIONAL BANK OF ARIZONA, whose address is P.O. BOX 66604 PHOENIX, AZ 85082 in the amount of: $608,000.00, recorded 08/02/2007 as Instrument No.: 2007000399278 of the Official Records of Queens County, New York

Property Address: 90-34 205TH STREET, HOLLIS, New York 11423
Tax Parcel ID: BLOCK: 10485, LOT: 88

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an Assignment within the secondary mortgage market

Together with the Note or Notes therein described or referenced to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Effective date:  9-10-16

MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC
By Specialized Loan Servicing LLC, as Attorney in Fact

By: _____
STACY PIERCE
VICE PRESIDENT
Visionet, as Attorney in Fact for Specialized Loan Servicing LLC

POA Recorded on 8/9/16 under CRFN 2016000274004

State of PENNSYLVANIA
County of ALLEGHENY

On  8-10-16  before me, Autumn R Carnegie the undersigned, a Notary Public in and for the county of ALLEGHENY in the State of Pennsylvania, personally appeared Stacy Pierce, VICE PRESIDENT personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
AUTUMN R CARNEGIE
Notary Public
FINDLEY TWP, ALLEGHENY COUNTY
My Commission Expires Jun 6, 2020

Autumn R Carnegie
My Commission Expires: 06/06/2020